IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HUBERT D. HILL, #N47634, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 19-cv-00405-JPG |
| ) | |
| JOHN LAKIN, ) | |
| HUGHES LOCHARD, ) | |
| and KAREN DEEM, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter comes before the Court for consideration of a Joint Motion for Summary Judgment filed by Defendants John Lakin, Karen Deem, and Hughes Lochard. (Doc. 58). Plaintiff Hubert Hill filed a response in opposition to the motion. (Doc. 60). For the reasons set forth below, Defendants John Lakin and Karen Deem's motion shall be **GRANTED**, but Defendant Hughes Lochard's motion shall be **DENIED**.

## BACKGROUND

Plaintiff Hubert Hill filed this civil rights action pursuant to 42 U.S.C. § 1983 for constitutional deprivations that occurred at Madison County Jail when he was denied adequate treatment for pain associated with a broken ankle he sustained prior to his detention at the Jail. (Doc. 1). At the time of his arrest on September 25, 2018, Hill wore a medical boot for a right ankle fracture, but he re-injured his ankle during his detention. Although his fracture healed completely, Hill's foot pain persisted for months thereafter. He claims that the defendants took insufficient steps to diagnose the source of his pain or provide an effective and safe course of treatment for it. (*Id.*).

1

Hill brought suit against Sheriff John Lakin, in his official capacity, for the Jail's policy of denying treatment for pre-existing injuries and against Dr. Hughes Lochard and Nurse Practitioner Karen Deem, in their individual capacities, for denying adequate treatment for his pain. (Doc. 1). Following screening of this matter under 28 U.S.C. § 1915A, the Court allowed Hill to proceed against Lakin, in his official capacity, and against Lochard and Deem, in their individual capacities, for deliberate indifference to his chronic pain. (Doc. 6). The Court noted that Hill's legal status remained unclear at screening, but the allegations supported a claim against the defendants under both the deliberate indifference standard applicable to prisoners and the objective unreasonableness standard applicable to detainees. (*Id*.). Hill has since clarified that he was a pretrial detainee during the relevant time period, triggering application of the Fourteenth Amendment's objective unreasonableness standard. (Doc. 60).

## JOINT MOTION FOR SUMMARY JUDGMENT

Defendants Lakin, Deem, and Lochard filed a joint motion for summary judgment on the merits. (Doc. 58). Relying on Hill's redacted medical records from Madison County Jail (Doc. 58-1) and Hill's deposition testimony (Doc. 58-2), they argued that he received timely and adequate medical care. This includes treatment for his pre-existing fracture and for ongoing pain associated with his injuries. (Docs. 58, 58-1, and 58-2). He simply disagreed with the treatment plan for his chronic pain. (*Id*.). Defendants ask the Court to find that Hill's refusal to adhere to the objectively reasonable treatment plan absolves them of liability here. (*Id*.).

## PLAINTIFF'S RESPONSE

Hill filed a response in opposition to the motion. (Doc. 60). Relying on excerpted Jail medical records, Illinois Department of Corrections medical records, and Jail grievances and responses, Hill offers limited objections to Defendants' proposed findings of fact to argue that he

was offered a persistent course of ineffective treatment for his injuries and pain. (*Id*.). Consequently, Hill was forced to endure unnecessary and prolonged pain associated with his right foot injury. He asks the Court to find that the medical staff's attempts to downplay the extent or duration of his pain and ineffective treatment for it preclude summary judgment. (*Id*.).

### FACTS

The facts set forth below are construed in the light most favorable to Hill because he is the non-moving party. *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757 (7th Cir. 2021) ("[N]o matter how tempting it might be on summary judgment to be distracted by the sparkle of seemingly compelling facts, our assigned task is to take the facts in the light most favorable to the non-moving party."). Prior to his detention at Madison County Jail ("Jail"), Hill was diagnosed with a displaced fracture to his right ankle at Gateway Regional Medical Center on September 3, 2018. (Doc. 58, ¶ 2). He was discharged the same day with a walking boot, crutches, and prescription pain medication. (*Id*.). This medication included Naprosyn[1] (500 mg) (2 times per day, 30 tablets) and Norco[2] (325 mg) (every six hours as needed, 20 tablets). (*Id*.). Hill was instructed to follow up with Dr. Scherer two or three days later, but he sought no additional care. (*Id*.).

Following his arrest three weeks later on September 25, 2018, Hill informed a booking officer about his fracture, crutches, and medication. (*Id*. at ¶ 3). He met with a nurse to discuss the same on September 26, 2018. (*Id*.). The following day, Dr. Arendell ordered an x-ray of Hill's right tibia and fibula, and the image showed an acute lateral malleolus fracture. (*Id*. at ¶ 4). These results were faxed to Dr. Scherer. (*Id*.). Hill was also given pain medication. (*Id*.).

---

[1] Naprosyn is a prescription nonsteroidal anti-inflammatory drug used to relieve pain, tenderness, swelling, inflammation, and joint stiffness. In non-prescription strengths, it is referred to as naproxen and branded as Aleve. *See* https://medlineplus.gov/druginfo/meds (site last visited March 1, 2022).
[2] Norco is a combination product containing both acetaminophen (*i.e.*, Tylenol) and hydrocodone. *See id*.

On October 3, 2018, jail staff arranged for Hill to meet with Tom Zaiz, a physician's assistant at Dr. Scherer's office on October 10, 2018. (*Id*. at ¶ 5). Three days before the scheduled appointment, Hill reported new pain associated with a popping sound that occurred when he removed his boot on October 7, 2018. (*Id*. at ¶ 6). He was given Motrin (600 mg, 2 times per day for 3 days) and issued orders for another x-ray. (*Id*.). The x-ray was taken on October 8, 2018, and the results were similar to the images from September 27, 2018. (*Id*. at ¶¶ 6-7). A repeat study was recommended to assess interval changes, after his acute symptoms improved or resolved. (*Id*. at ¶ 7). When Hill complained about a twisted ankle on October 9, 2018, his Motrin was increased to three-times daily indefinitely. (*Id*. at ¶ 8).

On October 10, 2018, Hill met with Zaiz in Dr. Scherer's office. (*Id*. at ¶ 9). Additional x-rays were ordered. (*Id*.). When the x-rays showed a healed fracture, Dr. Scherer questioned the angle of the images taken two days earlier. (Doc. 58-1, pp. 30-31). The physician's assistant reported that Hill's "fracture is well healed at this point." (Doc. 58, ¶ 9). Zaiz recommended strengthening stretches and exercises. (*Id*.).

On October 27, 2018, Hill met with Nurse Karen Deem after he submitted a sick call complaining of pain in his right foot. (*Id*. at ¶ 10). She prescribed rest, elevation, and Motrin (600 mg, 2 times per day for 5 days). (*Id*.).

On November 6, 2018, Plaintiff again requested sick call for pain in his right foot but later refused sick call when invited. (*Id*. at ¶ 11). On November 27, 2018, he submitted a similar sick call request and, this time, received another prescription for Motrin (600 mg, 2 times per day for 5 days). (*Id*. at ¶ 12). The same day, Hill filed a grievance alleging that the Jail refused to treat pre-existing conditions or pay for an MRI. (*Id*. at ¶ 13). Medical staff contacted Dr. Scherer's office two days later on November 29, 2018, in order to determine whether Hill should be seen

again for any additional treatment. (*Id*. at ¶ 14). Captain Eales advised Hill that medical staff would follow the treatment plan recommended by Dr. Scherer. (*Id*. at ¶ 15).

On December 3, 2018, Dr. Scherer's office declined to see Hill again for his fracture or pain, after concluding that his facture was well healed. (*Id*. at ¶ 16). However, the doctor suggested that additional testing could be ordered, if Hill's complaints persisted. (*Id*.). The same day, Dr. Arendell ordered a fourth x-ray of Hill's right ankle, and it showed no fracture or dislocation. (*Id*. at ¶ 17). However, the x-ray report showed ongoing soft tissue swelling on December 3, 2018. (*See* Doc. 58-1, pp. 56-57). He was prescribed more Motrin (600 mg, 2 times per day, long term) on December 4, 2018. (Doc. 58, ¶ 18).

On January 22, 2019, Hill again requested sick call for pain in his right foot. (*Id*. at ¶ 19). He explained that the pain medication was no longer working. (*Id*.). At the appointment, medical staff noted that Hill was mobile, had good range of motion, and showed no signs of swelling or redness. (*Id*.). He also refused alternative pain relievers, including Tylenol and Aleve. (*Id*.).

On January 25, 2019, Hill again requested sick call for right foot pain that impacted his walking. (*Id*. at ¶ 20). Medical staff noted that he was seen by Nurse Karen who noted his release from the orthopedist, his numerous x-rays, his current order for Motrin, and his refusal to take Tylenol or Aleve. (*Id*.; Doc. 58-1, p. 82).

Hill asserts that everything changed when a private medical corporation and Dr. Lochard took over administration of his care and discontinued his orders for Motrin on February 1, 2019. (Doc. 60). From that point forward, he was only offered Tylenol. Hill admittedly refused to take it. He was diagnosed with advanced cirrhosis of the liver, and his prior treating physicians warned him against taking acetaminophen in any form because of his liver condition. He refused offers of Tylenol for this reason and because the pain reliver did not control his pain. Although he filed

5

complaints and grievances to explain this to staff, Hill maintains that they took insufficient steps to verify his diagnosis or provide him with alternative pain relivers. (*Id*.).

Against this backdrop, Hill put in another sick call request to address his serious foot pain, discontinuation of medication, and limping on February 1, 2019. (Doc. 58, ¶ 21). At an appointment on February 7, 2019, medical staff noted full weight-bearing, normal gate, and good range of motion. (*Id*.). Dr. Lochard recommended continued monitoring and foot stretches. (*Id*.).

Hill again complained of unrelenting foot pain on March 3, March 13, and March 15, and he underwent further evaluation by medical staff each time. (*Id*. at ¶ 22). Dr. Lochard advised him to continue his foot stretches and range of motion exercises, despite his complaints of their ineffectiveness. (*Id*.). Hill was also offered and refused Tylenol at each of these appointments, due to his diagnosis with advanced cirrhosis of the liver resulting from Hepatitis C. (*Id*.).

In June 2019, Hill was seen for complaints of back pain. (*Id*. at ¶ 23). He was prescribed Tylenol (500 mg, 2 times per day for 5 days). (*Id*.). However, he refused the medication. A note in his records indicated that he "may take despite liver disease." (*Id*.).

On June 13, 2019, Hill once again requested sick call for right foot pain. (*Id*. at ¶ 24). Medical staff noted a normal gate, positive range of motion, and good mobility. (*Id*.). Dr. Aragona or Dr. Lochard prescribed Tylenol (1000 mg, 2 times per day for 7 days). (*Id*.). Hill again requested sick call to address pain in his right foot three days later on June 16, 2019. (*Id*. at ¶ 25). He explained that Tylenol was doing "nothing at all" for the pain. (*Id*.). When Dr. Aragona or Dr. Lochard examined him the next day, the doctor noted that Hill could toe lift and heel rock without pain, tenderness, or edema. (*Id*.). Although more Tylenol was offered, Hill refused it on June 18, June 19, and June 20. (*Id*.). On June 21, 2019, Hill filed a grievance to address these concerns. (*Id*. at ¶ 26). Captain Eales responded by stating that Dr. Aragona offered Tylenol, and

it was safe in smaller doses. However, Hill refused to take it. Hill's medical records include no other complaints of foot pain after June 21, 2019. (*Id.*).

## LEGAL STANDARD

Summary judgment is appropriate only if the moving party can show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celetex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden of establishing that no material facts are genuinely disputed. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). Once a properly supported motion for summary judgment is filed, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must then "view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen v. Fincantieri Marine Grp., LLC,* 763 F.3d 832, 836 (7th Cir. 2014) (citations omitted). The Court does not decide the truth of the matters presented, and it cannot "choose between competing inferences or balance the relative weight of conflicting evidence." *Anderson*, 477 U.S. at 248; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir 1994). The Court has "one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Stewart*, 14 F.4th at 760 (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)). If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]" then a genuine dispute of material fact exists. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016).

## DISCUSSION

The Fourteenth Amendment Due Process Clause governs Hill's claim against all three defendants because he was a pretrial detainee during the relevant time period. *See Miranda v.*

*County of Lake*, 900 F.3d 335 (7th Cir. 2018).  A pretrial detainee's medical claim triggers a two-part inquiry under the Fourteenth Amendment.  *McCann v. Ogle Cty., Illinois,* 909 F.3d 881, 886 (7th Cir. 2018) (internal quotations omitted).  The court first asks "whether the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [Plaintiff's] case."  *Id*.  Negligence and gross negligence do not satisfy this standard.  *McCann*, 909 F.3d at 886.  The court also asks "whether the challenged conduct was objectively reasonable" based on "the totality of the facts and circumstances faced by the individual alleged to have provided inadequate medical care."  *Id*.  In other words, Hill must demonstrate that genuine issues of material fact exist on the following two questions: (1) whether he suffered from an objectively serious medical condition and (2) whether the medical staff's response to it was objectively unreasonable.  *Id*.

## **Sheriff Lakin**

The Court allowed Count 1 to proceed against the sheriff, in his official capacity, based on Hill's theory that the Jail had a policy, custom, or practice of denying medical care for pre-existing medical conditions.  (Doc. 6, pp. 5-6).  "When a plaintiff sues an individual officer in his official capacity, the suit is treated as if the plaintiff sued the municipality itself."  *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006), *as amended on denial of reh'g* (May 25, 2006) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).  A local governmental entity is subject to suit under Section 1983 where "the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority."  *Thomas v. Cook Cty., Sherriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1987)).  In his

Complaint, Hill quoted a nurse as stating, "Madison County does not treat pre-existing conditions," and further alleged that the Madison County's policy and practice was aimed at reducing medical costs for the county. (Doc. 1, pp. 8, 11). Based on his final policymaking authority over operations at the Jail, Sheriff Lakin remained named in this action, in his official capacity. *See DeGenova v. Sheriff of DuPage Cty.,* 209 F.3d 973, 976 (7th Cir. 2000) ("Illinois sheriffs have final policymaking authority over jail operations.").

Sheriff Lakin moved for summary judgment on this claim, and Hill points to no evidence that the county's policy resulted in the constitutional deprivation at issue. (Doc. 60). Hill clarifies that his claim stems from the failure to treat his chronic pain that developed during his detention, not the failure to treat the right ankle fracture that occurred prior to his arrest. Hill attributes the chronic pain to a possible new injury to a tendon or ligament in his right foot that may have occurred in October 2018, when he heard a popping sound after removing his walking boot and/or twisting his right ankle, as reflected in a radiology report noting soft tissue swelling dated December 3, 2018. (*Id.*). Any policy aimed at curbing medical costs for pre-existing injuries is simply not relevant to Hill's pain that developed while he was detained.

The only pre-existing injury Hill presented at intake was his right ankle fracture on September 25, 2018. Jail officials immediately, regularly, and adequately responded to his complaints regarding the fracture, by allowing him to use a medical boot, treating his pain with medication and exercises, and x-raying the injury to monitor the healing process. The Jail medical staff worked with Hill's outside treating physician to provide prompt care that was consistent with Dr. Scherer's recommendations. On December 3, 2018, Hill's doctor released him from treatment for the "well healed" fracture. A final set of x-rays taken at that time confirmed that the preexisting

fracture was healed.  No reasonable jury could find in favor of Hill on this claim, so Sheriff Lakin is entitled to summary judgment.

### Nurse Karen Deem

According to the submissions, Nurse Deem treated Hill from September 2018 until January 2019.  During this time period, she responded promptly to sick call requests and arranged medical appointments inside and outside of the facility when Hill complained about his original fracture, new injuries, or associated pain.  Nurse Deem worked with Hill's medical team to monitor his treatment as his fracture healed.  She ensured prompt follow-up care when he reported new injuries.  Between September and December 2018, Hill received four sets of x-rays that ultimately showed a well-healed fracture.  He received ongoing pain relief that included a long term prescription for Motrin, among other things.  In early December 2018, Hill was released from treatment by his outside provider, Dr. Scherer.  Although Dr. Scherer declined to treat his well-healed fracture and soft tissue pain any further, Nurse Deem continued to provide Hill with Motrin, as needed, for pain.  When Hill indicated that the Motrin was no longer effective in late January 2019, Nurse Deem noted that he was offered Aleve and/or Tylenol instead.  (Doc. 58, ¶ 20; Doc. 58-1, p. 82).  Hill refused both.

Hill's claim against the nurse is akin to the claim against jail medical staff in *Williams v. Ortiz*, 937 F.3d 936 (7th Cir. 2019), where the Seventh Circuit affirmed summary judgment on a pretrial detainee's claim of inadequate care for osteoarthritis under the Fourteenth Amendment Due Process Clause.  The medical staff in *Ortiz* denied a detainee's request for a specific prescription pain medicine and mattress.  However, they examined him regularly and promptly, addressed his complaints of joint and foot pain, treated his bone spurs, encouraged exercise to reduce or prevent pain, treated his pain with over-the-counter medicines, and adjusted his treatment

in response to his complaints. *Id*. In light of these circumstances, the Seventh Circuit explained that the detainee "disagreed with the course of treatment chosen by the jail's medical staff. But just because the staff declined to provide him with his desired prescription pain medicine or the comfort of an extra mattress does not mean that the course of treatment was objectively unreasonable." *Id*. at 944 (citation omitted).

In this case, the undisputed facts demonstrate the nurse's objectively reasonable treatment of Hill. Nurse Deem promptly responded to his complaints, scheduled appointments with specialists, ensured follow-up care, implemented treatment plans ordered by his doctors, continued to treat his pain after his release from his specialist, and adjusted his treatment when he complained. No evidence suggests that the nurse resorted to an ineffective course of treatment with Tylenol. On the contrary, Nurse Deem responded promptly to Hill's requests for medical care and pain relief by providing him with alternative treatment options for his lingering complaints of pain. Nurse Deem is entitled to summary judgment.

## **Dr. Lochard**

Beginning in February 2019, a new private medical corporation and medical provider took over Hill's care. From this point forward, Dr. Lochard was involved in his treatment. According to Hill, Dr. Lochard cancelled all of his prior prescription drug orders, including his prescription for Motrin. From then on, Tylenol was the only medication offered for his pain.

For the next five months, Hill's medical records reflect his frequent and persistent complaints of pain that was unabated by the stretching exercises and Tylenol that Dr. Lochard recommended. Each time Hill complained, Dr. Lochard offered him more Tylenol and encouraged

11

him to perform more stretching exercises.[3] The doctor also encouraged him to file a new sick call request if his symptoms persisted.

On more than one occasion, Hill filed a new sick call request without delay to emphasize the persistent nature of his pain. Hill also explained that he was diagnosed with advanced cirrhosis of the liver and could not tolerate any Tylenol at all because it contained acetaminophen. He was previously warned against taking any acetaminophen at all by his multiple providers. He requested alternative forms of diagnosis and treatment.[4]

From these facts, a reasonable jury could conclude that Dr. Lochard's persistence in an easy, but ineffective, course of treatment with Tylenol and stretching exercises amounted to a violation of Hill's constitutional rights under the Fourteenth Amendment Due Process Clause. Even in the Eighth Amendment context, this conduct could amount to deliberate indifference. *See Berry v. Peterman*, 604 F.3d 435, 437-38 (7th Cir. 2010) ("Although the doctor did not completely ignore plaintiff's pain, a doctor's choice of the "easier and less efficacious treatment" for an objectively serious medical condition can still amount to deliberate indifference for purposes of the Eighth Amendment."); *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (stating that "medical personnel cannot simply resort to an easier course of treatment that they know is ineffective"); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (persistence in a course of

---

[3] At some point, Dr. Aragona took over Hill's care. The Court is unable to determine exactly when this transition occurred. The defendants filed medical records with the names of medical staff and officers redacted. Even so, the unredacted portions of these records make it clear that Hill was confused about who treated him at various points in time. Hill insists that Dr. Lochard continued treating him in June 2019, and Defendants point out that it was actually Dr. Aragona who provided care. Given their redactions of the medical records, the Court cannot tell and will not engage in an exhaustive search for this information. At this stage, all disputes regarding material facts must be resolved in favor of Hill.

[4] At one point, Hill asked whether an MRI would help diagnose a new soft tissue injury. At his deposition, Hill testified that he was given Tramadol for pain while in the custody of the Illinois Department of Corrections. He also indicated that this was his preferred form of pain relief. However, it does not appear to this Court that Hill ever insisted on treatment with Tramadol.

treatment "known to be ineffective" violates the Eighth Amendment).  This is particularly the case, given Hill's advanced cirrhosis of the liver.  At this stage, the Court does not question the credibility of Hill's testimony about his pain, his advanced cirrhosis of the liver, his providers' past recommendations against use of acetaminophen, or his past prescription for Norco (which the Court cannot even tell was taken by him).  This Court only finds that a reasonable jury could conclude that Dr. Lochard's insistence on the same, ineffective course of treatment with Tylenol and stretching exercises from February through June 2019 was objectively unreasonable and in violation of Hill's rights under the Fourteenth Amendment due process standard.  Accordingly, Dr. Lochard is not entitled to summary judgment.

## DISPOSITION

**IT IS ORDERED** that the Joint Motion for Summary Judgment filed by Defendants John Lakin, Karen Deem, and Hughes Lochard (Doc. 58) is **GRANTED in part and DENIED in part**.

**IT IS ORDERED** that Defendants John Lakin and Karen Deem's motion is **GRANTED**, and **COUNT 1** is **DISMISSED with prejudice** against these defendants.  The Clerk's Office is **DIRECTED** to enter judgment against Defendants John Lakin (official capacity) and Karen Deem (individual capacity) at the close of this case.

**IT IS ORDERED** that Defendant Hughes Lochard's motion is **DENIED**, and **COUNT 1** survives summary judgment against this individual defendant under the Fourteenth Amendment Due Process Clause.

**IT IS SO ORDERED.**

**DATED: 3/7/2022**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Judge**
